Filed 11/18/13  Hart v. Wells Fargo Bank CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MAISHA HART, | B241513 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC411228) |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Affirmed.

Law Offices of Egbase & Associates and Gerald O. Egbase for Plaintiff and Appellant Maisha Hart.

Severson & Werson, Jan T. Chilton and Erik Kemp for Defendants and Respondents Wells Fargo Bank, N.A. and Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11.

_____

Maisha Hart appeals from the judgment entered after the trial court granted summary judgment in favor of Wells Fargo Bank, N.A., doing business as America's Servicing Company (Wells Fargo) and Deutsche Bank National Trust Company, as trustee for First Franklin Mortgage Loan Trust 2006-FF11 (Deutsche Bank) (collectively the bank defendants).  Hart contends the trial court erred in concluding her equitable claims to quiet title and set aside a trustee sale based on wrongful foreclosure failed as a matter of law.  She also contends triable issues of material fact exist as to her related claims for breach of oral contract, promissory estoppel, fraud and negligent misrepresentation, unfair competition and intentional infliction of emotional distress.  We affirm**.**

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Hart's Purchase of Property and Execution of a Promissory Note Secured by a Deed of Trust*

In May 2006 Hart purchased a condominium in Inglewood by obtaining a loan in the amount of $352,000 from First Franklin Mortgage.  The loan was to be amortized over a 30-year term with an initial interest rate of 8 percent, fixed for two years, subject to indexed rate increases after two years not to exceed a maximum interest rate of 14 percent.[1]  To obtain the loan Hart signed a promissory note secured by a deed of trust encumbering the condominium.  The deed of trust identified Stewart Title of California as trustee and Mortgage Electronic Registration Systems, Inc. (MERS), nominee of First Franklin Mortgage, as the beneficiary.

2. *Hart's Default on the Promissory Note*

Hart failed to make payments on the promissory note after November 2007.  On April 7, 2008 First American Loanstar Trustee Services, identifying itself as "agent for the current beneficiary" of the deed of trust, recorded a "Notice of Default Under Deed of Trust and Election To Sell Property."  The notice stated Hart was in default of her obligations under the note; the sum past due was $25,784.93.  On April 16, 2008 the

---

[1]     Under the terms of the loan the adjusted interest-rate increases after two years were to be based on the London Interbank Offered Rate (LIBOR) plus 5.375 percent.

recorded notice of default was sent to Hart at the property and posted there pursuant to Civil Code section 2924, subdivision (b)(1).

On May 6, 2008 First American Loanstar became the new trustee, replacing Stewart Title. The substitution of trustee was recorded in the county records. On May 10, 2008 First Franklin and MERS assigned their interests in the note and deed of trust to Deutsche Bank, which promptly recorded the assignment. Wells Fargo serviced the loan as agent for Deutsche Bank.

On July 9, 2008 a Notice of Trustee's Sale was posted on the property stating a trustee sale would take place on July 30, 2008. A copy of that notice was sent to Hart by certified mail and recorded in the county records. For reasons not apparent in the record, the sale did not take place on July 30, 2008.

3. *Hart's Attempt To Halt the Trustee Sale and Negotiate a Loan Modification*

In August 2008 Hart contacted Wells Fargo seeking to halt any sale and modify the loan. She provided the bank with documentation of her income and expenses to permit it to review her modification request. According to Hart, Antonio Montgomery, an employee and agent for Wells Fargo, told her in August 2008 she could cure her default by making three successive monthly payments of $3,306.00 for the months of September, October and November 2008. Montgomery allegedly told Hart, once she had made those payments, she "would no longer be in default" and Wells Fargo would agree to modify the loan to reduce her interest rate and her monthly payment.

4. *The Written Special Forbearance Agreement*

On September 16, 2008, after her conversation with Montgomery, Hart entered into a one-page written "special forbearance agreement" with Wells Fargo in which Wells Fargo agreed to refrain from exercising its right of foreclosure under the deed of trust if Hart made three monthly payments of $3,306.00 for September through November and a fourth balloon payment, due December 6, 2008, for $41,328.83. (Although Hart dated the agreement September 16, 2009, she admitted at her deposition she had written the wrong year and had entered into the agreement in September 2008.) The written forbearance agreement states, "Upon successful completion of the payments

3

outlined in this plan, your loan will be reviewed for a loan modification. Based on investor approval, this may satisfy the remaining past due amount on your loan. The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future. All of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this agreement or non-compliance with this agreement, shall render the forbearance null and void, and at the option of the lender without further notice to you may terminate this agreement." Hart made three payments of $3,306.00 for the months September through November 2008.

5. *Wells Fargo's Proposed Loan Modification*

On December 5, 2008 Wells Fargo notified Hart she had been approved for a loan modification under the following terms: A monthly payment of $2,834.93, excluding any mandatory escrow deposit, beginning February 2009 with a fixed interest rate of 8 percent over a 30-year term. Hart was notified she had five days to accept the terms of the modification agreement or it would expire. Hart immediately telephoned Wells Fargo objecting to the loan modification offer, insisting it did not conform to the terms of her oral agreement with Montgomery. Hart complained the monthly payment, calculated as $3,325.86 when mandatory escrow charges were included, was more than her previous monthly payment of $2,834.93 and the purportedly new 8 percent interest rate, albeit now fixed for 30 years, was effectively unchanged from the prior rate she had had difficulty satisfying. According to Hart, after several unsuccessful attempts to reach Montgomery, she was finally able to speak with a Wells Fargo employee named Lupe who agreed the modification did not comport to what Hart had been told and assured her Wells Fargo would redo it.

6. *The Foreclosure and Trustee's Sale*

Hart did not make the December balloon payment required under the written forbearance agreement (or any payment after November 2008) and did not accept and sign the December 5, 2008 loan modification agreement. On January 27, 2009 Wells

4

Fargo sent Hart a letter informing her the loan modification had been cancelled "pursuant to her request" and her file closed. Hart said she was shocked, as she had not asked for her modification to be cancelled.

On January 29, 2009 the property was sold to Deutsche Bank as the highest bidder at a trustee's sale for $255,000. Hart was unaware of the sale until February 2, 2009 when she received a notice from Wells Fargo. Hart alleges she suffered emotional distress and accompanying physical ailments as a result of learning of the sale of her home.

7. *The Unlawful Detainer Action*

On March 16, 2009 Deutsche Bank filed an unlawful detainer action against Hart seeking possession of the property. (L.A.S.C. Case No. 09L00578.) Hart defended the action, arguing the notice of default had been defective because First American Loanstar was not yet the trustee in April 2008 when the notice was executed and did not have authority to act as agent of Deutsche Bank, which only became the beneficiary under the note in May 2008. In addition to alleging procedural irregularities in the notice of default, Hart also argued she had fully performed under a valid oral loan modification agreement with Wells Fargo, the agent of Deutsche Bank, thereby making the foreclosure and resulting sale unlawful and void.

Deutsche Bank filed a timely motion for summary judgment (Code Civ. Proc., § 1170.7), contending it had established the essential elements of an unlawful detainer action—the property had been sold to it in accordance with Civil Code section 2924 under a power of sale contained in a deed of trust—and was entitled to judgment in the action as a matter of law. The court denied the motion, finding a triable issue of fact as to whether Hart had cured her default pursuant to a valid loan modification agreement, thereby extinguishing the right to sell under the deed of trust.

On October 22, 2009, following a bench trial, the court found the foreclosure sale invalid because First American Loanstar had no authority "to act/give notice of default on behalf of beneficiary" in April 2008. Accordingly, the statutory prerequisites for an

unlawful detainer judgment had not been satisfied. The court did not reach the question whether Hart had cured her default under a valid loan modification agreement.

On November 13, 2009 Deutsche Bank filed a notice of intent to seek to vacate the judgment. On November 20, 2009 Deutsche Bank moved to set aside and vacate the unlawful detainer judgment on the ground the court had misunderstood First American Loanstar's status: First American Loanstar was not acting as a trustee or as agent for Deutsche Bank but, as set forth in the notice of default itself, as the agent for "the current beneficiary" under the deed when it executed and recorded the notice of default, which it was permitted to do. (See Civ. Code, § 2924, subd. (a)(1) [agent of trustee or beneficiary may execute, file and record notice of default].) The court agreed the rationale for its judgment was legally flawed. On December 21, 2009 the court granted Deutsche Bank's motion, vacated the October 22, 2009 judgment and entered a new judgment in Deutsche Bank's favor.

The Appellate Division of the Los Angeles Superior Court found Deutsche Bank's notice of intent to seek to vacate the judgment was not timely filed. As a result, and without reaching the merits of the appeal, the appellate division found the trial court lacked jurisdiction to grant Deutsche Bank's motion to vacate the judgment in the unlawful detainer action. As directed by the appellate division, the court reinstated its October 22, 2009 judgment in favor of Hart.

8. *The Instant Action*

a. *Hart's complaint*

On June 15, 2009, while the unlawful detainer action was pending, Hart filed the instant action against the bank defendants. In the operative second amended complaint Hart alleged equitable causes of action against Deutsche Bank to quiet title in the condominium and to obtain declaratory relief and an injunction. She also sought damages from Wells Fargo for breach of oral contract, fraud and negligent misrepresentation, unfair and unlawful business practices under the Unfair Competition Law (Bus. & Prof. Code, § 17200), promissory estoppel and intentional infliction of emotional distress.

6

b. *Hart's motion for judgment on the pleadings*

On February 3, 2012 Hart moved for judgment on the pleadings as to her equitable claims contending the unlawful detainer judgment conclusively established the foreclosure sale was invalid and the bank defendants were collaterally estopped by virtue of that judgment from asserting otherwise. The court denied Hart's motion on two grounds. First, given the limited nature of unlawful detainer proceedings, the court found it improper to apply the doctrine of collateral estoppel, concluding it was impossible to determine from the requests for judicial notice filed in connection with the motion whether the issues of the validity of the foreclosure sale had actually been litigated and decided. Second, the motion failed to address any of the affirmative defenses raised in Deutsche Bank's answer to the operative complaint.

c. *The bank defendants' motion for summary judgment*

On February 3, 2012, the same date Hart moved for judgment on the pleadings, the bank defendants moved for summary judgment, or in the alternative, summary adjudication, asserting Hart could not establish any of her causes of action as a matter of law. The bank defendants argued they had complied with the trustee sale requirements of Civil Code section 2924; even if there had been some minor procedural irregularities in the notice of default, Hart could not establish prejudice; there was no oral modification agreement as a matter of law for a variety of reasons; even if there was an oral agreement, it was superseded by the written forbearance agreement; and Hart failed to comply with the written forbearance agreement, relieving the bank defendants of any obligation to refrain from exercising the right of foreclosure under the deed of trust.

Hart opposed the motion, arguing the prior unlawful detainer judgment collaterally estopped the bank defendants from claiming the foreclosure sale complied with statutory requirements; triable issues of material fact existed as to whether there was a valid oral loan modification agreement that made the sale void from its inception; the bank defendants were equitably estopped from asserting a statute of fraud defense to the oral modification agreement; and triable issues of material fact precluded summary judgment/summary adjudication on the remaining tort and promissory estoppel claims.

7

As part of her opposition papers, Hart provided a declaration attesting to what she characterized as the August 2008 oral loan modification agreement with Montgomery, her three payments in accordance with that agreement and her conversation with Wells Fargo agent Lupe in December 2008. She also declared she had never requested a cancellation of her modification request and was surprised to learn about the cancellation and sale of her property. Finally, she included computer printouts obtained from Wells Fargo during discovery. One printout purportedly showed that on January 4, 2008 Wells Fargo had determined a request for loan modification by Hart was "not feasible" under investor guidelines. Another Wells Fargo internal note dated December 3, 2008 states, "Borrower has completed the special forbearance part of the 3 (or more) month to mod and we are now completing the modification based on previous reviewed information. No additional docs necessary." Hart argued the December 3, 2008 internal memorandum raised a triable issue of material fact whether she had a valid oral loan modification agreement. The January 4, 2008 memorandum, she argued, showed that, despite its representations to the contrary, Wells Fargo never intended to modify her loan.

Hart did not mention the September 2008 written forbearance agreement in her opposition papers other than to challenge its admissibility and to assert she did not sign the agreement "in September 2009."

In their reply the bank defendants attached Hart's deposition testimony, taken after their moving papers had been filed, in which she acknowledged signing the forbearance agreement in September 2008 and writing September 2009 in error.

After ruling on the parties' evidentiary objections,[2] the trial court granted the bank defendants' motion for summary judgment. The court found Hart could not establish the foreclosure and sale were invalid: The notice of default was not improper and, even if it were or if the bank defendants were collaterally estopped from asserting otherwise, Hart

---

2    The court overruled Hart's objections to the bank defendants' evidence in support of their motion, finding each of the objections unfounded. It also overruled each of the bank defendants' evidentiary objections for failing to comply with the format requirements of rule 3.1354 of the California Rules of Court.

8

could not show she had suffered any prejudice, a necessary element of a claim for wrongful foreclosure premised on a procedural irregularity in the notice of default. The court also found there was no enforceable oral modification agreement and Hart could not establish detrimental reliance, an essential element of her promissory estoppel claim.

The court further found Hart was unable to establish her common law tort and unfair practices claims as a matter of law: As to the fraud-based causes of action, the court found the alleged misrepresentation by Montgomery that Hart's default would be cured by making three payments was directly contradicted by the subsequent, written forbearance agreement that Hart had signed. As a result, Hart could not show she justifiably relied on the alleged prior misrepresentation. Moreover, because the foreclosure sale was lawful, Hart could not establish her claims for intentional infliction of emotional distress or unfair business practices, both of which were premised on the illegality of the sale and the alleged fraudulent representations.[3]

**DISCUSSION**

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) We view the evidence in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's. (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284.)

---

[3]     On May 29, 2012 Hart filed a notice of appeal purporting to appeal from the trial court's May 15, 2012 minute order granting the bank defendants' motion for summary judgment. The court entered its judgment on June 20, 2012. We treat Hart's premature notice of appeal as timely. (See Cal. Rules of Court, rule 8.104(d)(2).)

2. *The Trial Court Did Not Err in Concluding Hart Could Not Prevail on Her Equitable Claims To Set Aside the Foreclosure and To Quiet Title*

a. *Governing law on judicial foreclosures*

The procedure leading to a nonjudicial foreclosure is governed by Civil Code section 2924: Upon default by the trustor under a deed of trust containing a power of sale, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. To commence the foreclosure process, the trustee, mortgagee, or beneficiary, or any of their authorized agents, must first record a notice of default and election to sell by the trustee. (Civ. Code, § 2924, subd. (a).) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. (b).) Then, after the three-month period has elapsed, a notice of sale must be published, posted and mailed and recorded in accordance with the time limits prescribed by the statute. (See Civ. Code, § 2924; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 101 (*Lona*).)

"'The manner in which the sale must be conducted is governed by [Civil Code] section 2924g. "The property must be sold at public auction to the highest bidder. [Citation.] [¶] . . . [¶] A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and a lender. [Citation.] Once the trustee's sale is completed, the trustor has no further rights of redemption. [Citation.] [¶] The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bonafide purchaser."'" (*Lona, supra,* 202 Cal.App.4th at p. 102; accord, *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 87.)[4]

---

4    Section 2924's requirements have been revised and augmented several times since May 21, 2009, including, most recently, in 2012 (effective January 1, 2013) as part of a comprehensive statutory scheme to address California's foreclosure crisis. (See Stats. 2012, ch. 86, § 1, par. (a) ["California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007"] & par. (b) ["[i]t is essential

10

The statutes governing nonjudicial foreclosure "'provide the trustor with opportunities to prevent foreclosure by curing the default. The trustor may make back payments to reinstate the loan up until five business days prior to the date of the sale, including any postponement. [Citations.] Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid the loss of the property.'" (*Lona, supra,* 202 Cal.App.4th at p. 102; accord, *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; see Civ. Code, § 2924c [curing default].)

    b. *Governing law on setting aside judicial foreclosure*

To obtain the equitable remedy of setting aside a trustee's sale based on wrongful foreclosure by a trustee under a deed of trust, the plaintiff trustor must establish three elements: (1) the trustee under a deed of trust with a power of sale caused an illegal, fraudulent, or willfully oppressive sale of real property; (2) the trustor suffered prejudice; and (3) the trustor either tendered the amount of the secured indebtedness or was excused from the tender requirement. (*Multani v. Witking & Neal* (2013) 215 Cal.App.4th 1428, 1449; *Lona, supra,* 202 Cal.App.4th at p. 104.)

The first element—an illegal, fraudulent or willfully oppressive sale of real property—can be established by showing the trustee failed to comply with section 2924's procedural requirements for the notice or conduct of the sale. (*Lona, supra,*

---

to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options"].) None of the recent amendments to section 2924 or to California's broader statutory scheme governing loan modifications or nonjudicial foreclosures is at issue in this case. Similarly, the provisions of the federal Emergency Economic Stabilization Act (12 U.S.C. §§ 5201-5253), under which the Home Affordable Mortgage Program (HAMP) was instituted in 2008 to encourage servicers of underlying mortgages "to take advantage . . . of other available programs to minimize foreclosures" (12 U.S.C. § 5219, subd. (a); see *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 785 [discussing HAMP]; *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 566-567 [same]), are not at issue here.

202 Cal.App.4th at p. 104; *Knapp v. Doherty, supra,* 123 Cal.App.4th at pp. 96-99.) If that procedural irregularity is apparent on the face of the deed, the sale is void at its inception; and nothing further need be established to set aside foreclosure. (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 877-878 [where deed is void on face, equity not required to set aside foreclosure sale].) However, if the sale is facially valid but there is some procedural irregularity in notice procedures, it is voidable, at least as to third parties other than bonafide purchasers, upon proof of prejudice and either tender of the secured indebtedness or excusal from the tender requirement. (*Chavez v. Indymac Mortgages* (2013) 219 Cal.App.4th 1052, 1063.)

        c. *The bank defendants are collaterally estopped from claiming the notice of default was signed by the proper trustee; nonetheless, Hart cannot show prejudice*

Hart contends the finding in the unlawful detainer judgment that First American Loanstar lacked authority to execute the notice of default is binding in this action under the doctrine of collateral estoppel. She is correct.

The doctrine of collateral estoppel, also known as issue preclusion, bars relitigation of an issue actually decided in a prior proceeding. The party seeking to invoke the doctrine must establish five threshold requirements: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; accord, *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943; see also *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 346 ["[a]lthough a second action between the parties on a different cause of action is not barred by res judicata, nevertheless '. . . the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were *actually litigated and determined in the first*

12

*action*"'"'"].)  The party asserting collateral estoppel bears the burden of establishing these requirements.  (*Lucido*, at p. 341; *Pacific Lumber Co.*, at p. 943.)

The trial court ruled the unlawful detainer judgment, the result of a summary proceeding, should not bind it in its determination whether the notice of default was defective.  (See *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371 [ordinarily an unlawful detainer judgment has limited preclusive effect because that proceeding is summary in nature and focuses only on determining a party's right to immediate possession of property]; *Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557 [same].)  However, when the issue raised in the second action was necessarily litigated and decided in the unlawful detainer proceeding, the fact the issue was decided in an otherwise limited proceeding is immaterial:  Like any other finding actually litigated and decided between the parties, it is entitled to preclusive effect.  (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 256; see *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 974 [validity of bank's title, decided in the unlawful detainer action, was binding in subsequent quiet title proceeding].)

Although the bank defendants vigorously challenge the propriety of the unlawful detainer court's determination First American Loanstar lacked authority to execute the notice of default (a determination the court attempted to reverse in its untimely order vacating the judgment), they acknowledge that issue was a central focus of the unlawful detainer proceeding and is entitled to preclusive effect in this case.  Still, they correctly contend Hart must prove more than a procedural irregularity in the foreclosure process; she must also show prejudice.  (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [the plaintiff in suit to set aside foreclosure sale must "demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interest"]; see *ibid.* ["[p]rejudice is not presumed from 'mere irregularities' in the foreclosure process," quoting *Meux v. Trezevant* (1901) 132 Cal. 487, 490]; *Debrunner v. Deutsche Bank National Trust. Co.* (2012) 204 Cal.App.4th 433, 443 [to set aside foreclosure sale based on defect in notice of default, plaintiff must demonstrate procedural irregularity in notice was prejudicial].)

Hart has not alleged, let alone presented any evidence, she was prejudiced because First American Loanstar, rather than Stewart Title, executed the notice of default in April 2008, one month before it became the trustee of record. Significantly, the notice of default itself was not filed prematurely: Hart had been in default for several months before the notice was executed. Moreover, by the time Hart acted on the notice, First American Loanstar had become the recorded trustee and Deutsche Bank the recorded beneficiary. In addition, Wells Fargo's loan servicing agency was identified properly in the notice of default. Finally, substitutions of trustees after the notice of default has been recorded as occurred here are expressly contemplated in the statutes. (See Civ. Code, § 2934a, subds. (b)-(d) [substitution of trustee].)

Implicitly acknowledging the absence of prejudice, Hart insists no showing of prejudice is necessary. Because First American Loanstar had no authority to execute the notice of default, either as the trustee of record or as agent for Deutsche Bank, the entire process, she argues, is void from its inception. She is mistaken. As discussed, when the asserted defect is in the process itself and not related to the validity of the deed or the power of sale, the sale is voidable, not void. (See *Dimock v. Emerald Properties, supra,* 81 Cal.App.4th at pp. 877-878 [sale void when defect is on face of deed; otherwise voidable]; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 802 [failure to comply with notice requirements for postponing trustee sale does not make sale void; any notice defects are deemed voidable and plaintiff was required to allege prejudice and tender of the indebtedness or excusal from tender requirement].) The lack of any proof of prejudice is fatal to Hart's claim to set aside the sale.

> d. *Hart's claim the trustee lacked the power of sale because she had cured her default in accordance with an oral agreement fails as a matter of law because any oral argument was superseded by the subsequent written forbearance agreement*

Hart alternatively contends the sale should be set aside because she cured her default prior to the sale in accordance with the oral loan modification agreement between her and Montgomery/Wells Fargo. (See *Bank of America, N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 716 [trustee's sale invalid where borrower and lender had

14

entered into agreement to cure default; loan was therefore current, and lender did not have right to foreclose]; *Chavez v. Indymac Mortgage Services, supra,* 219 Cal.App.4th at p. 1063 [same].)

The parties vigorously dispute whether there was, in fact, a valid oral loan modification agreement. The bank defendants insist there was not, observing there was no evidence Hart and Montgomery had agreed to essential terms of a new loan, such as the amount, the monthly payments or applicable interest rate. (See *Peterson Dev. Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 115 ["the material terms of a loan include the identity of the lender and borrower, the amount of the loan, and the terms for repayment"]; see *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 483 ["[u]nless an agreement to restructure a loan embodies definite terms, capable of enforcement, it is not a legally valid contract"], disapproved on another ground in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179.) At most, the bank defendants assert, the purported conversation with Montgomery reflects preliminary negotiations concerning a modification (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 891, 893; *Nungaray v. Litton Loan Servicing LP* (2011) 200 Cal.App.4th 1499, 1505), or an agreement to agree (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 213-214), neither of which is an enforceable contract. (See *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 59 [preliminary negotiations or agreements for future negotiations are not functional equivalent of valid, existing agreement].)

Hart insists the bank defendants miss the point: Whether or not there was a valid agreement to modify the loan in accordance with a specific term and interest rate, there was, at the very least, an oral agreement that Hart could cure her default and Wells Fargo would not foreclose if Hart made the three monthly payments totaling $9,918. This too, however, is problematic for Hart because forbearance agreements affecting the right of foreclosure such as the one Hart describes are subject to the statute of frauds and are invalid unless reduced to a writing. (See *Secrest v. Security National Mortgage Loan Trust* (2008) 167 Cal.App.4th 544, 547 (*Secrest*) ["[w]e hold an agreement by which a

15

lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds"]; see Civ. Code, § 1624, subd. (a)(3) [agreement affecting sale of real property is invalid unless in a writing subscribed to by the party sought to be charged"].)

Hart maintains she fully performed under the alleged oral agreement; accordingly, she argues, the bank defendants should be estopped from invoking the statute of frauds to deny the existence of the oral forbearance agreement. (See *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1108-1109 ["[w]here assertion of the statute of frauds would cause unconscionable injury,'" as when a party fully performs under the contract and has changed position in reliance on the oral contract, party seeking to assert the statute of frauds may be equitably estopped from using it to invalidate contract]; *Secrest, supra,* 167 Cal.App.4th at p. 555 [same]; *Chavez v. IndyMac Mortgage Services, supra,* 219 Cal.App.4th at p. 1061 [plaintiff homeowner pleaded sufficient facts of full performance to equitably estop lender from relying on statute of frauds]; but see *Secrest,* at p. 557 [rejecting argument that trustor's payment of money in accordance with oral forbearance agreement constituted sufficient performance to remove an agreement from requirements of statute of frauds: "the principle that full performance takes a contract out of the statute of frauds has been limited to the situation where [a party's] performance consisted of conveying property, rendering personal services, or doing something other than payment of money" and does not apply to payments made in connection with oral forbearance agreement].)

We need not decide whether the bank defendants are estopped in these circumstances from claiming protection under the statute of frauds. Even assuming there was a valid oral forbearance agreement, it was superseded by the subsequent written forbearance agreement and thus has no significance in the parties' present dispute. (See *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 346 (*Casa Herrera*).) The evidence is undisputed that Hart entered into the written forbearance agreement on September 16, 2008, after the date of the purported oral modification agreement. The written agreement, covering the terms of Hart's performance in exchange for the bank's

16

forbearance of its right to foreclose, superseded any prior oral agreement as a matter of law. (See *Casa Herrera*, at p. 345 [under Civ. Code, § 1625 and Code Civ. Proc., § 1856, a written agreement "*supersedes* any prior or contemporaneous promise at variance with the terms of that agreement"]; *id.* at p. 346 ["[t]hus any alleged oral agreement regarding the oven's capacity *no longer exists* because the written sales contract, as a matter of law, has replaced it"]; cf. *Singh v. Southland Stone, USA, Inc.* (2010) 186 Cal.App.4th 338, 353 (*Singh*) [whether parties intended agreement to be final integrated agreement superseding prior oral agreement is question of law for court].)

Significantly, this is not a circumstance where the written instrument is silent as to the terms and obligations now at issue and thus can be considered merely a supplement to the prior oral agreement. (See *Lindsay v. Mack* (1935) 5 Cal.App.2d 491, 497 ["'[t]he rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument'"].) Rather, the prior agreement, allegedly requiring three payments in exchange for the bank's forbearance, covers precisely the same matter and is directly at variance with the terms of the written agreement, requiring four payments curing the full amount of the default. Under these circumstances the oral forbearance agreement, to the extent one existed at all, was legally superseded by the subsequent writing and is without effect. (See Civ. Code, § 1625; *Masterson v. Sine* (1968) 68 Cal.2d 222, 225-228 [where the parol terms are such that, if agreed upon, they most certainly would have been included in the writing, they are, by definition, at variance with the writing and must be considered superseded thereby]; *Software Design & Application, Ltd. v. Price Waterhouse* (1996) 49 Cal.App.4th 464, 471 [same].)

Faced with the devastating effect of the written forbearance agreement, Hart challenges the trial court's ruling on its admissibility, contending the agreement lacks proper authentication and constitutes inadmissible hearsay. Accepting the written agreement was well within the trial court's discretion. (See *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 [evidentiary rulings made on summary

17

judgment are reviewed for abuse of discretion]; *Shugart v. Regents of the University of California* (2011) 199 Cal.App.4th, 499, 505 [same]; see generally *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114 [noting Supreme Court had left open the question whether a de novo or abuse of discretion standard applies to evidentiary rulings in connection with summary judgment motion in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)  The agreement was adequately authenticated by Wells Fargo employee Matthew Overton, who testified the written forbearance agreement was part of Wells Fargo's business records relating to Hart's loan.  (See Evid. Code, § 1271.)  Moreover, Hart herself both identified the agreement and clarified any ambiguity concerning the date it was executed, testifying at her deposition she had signed the written forbearance agreement in September 2008 and had written the year 2009 on the agreement by mistake.

Hart, who objected at the hearing to the bank defendants' submission of her deposition testimony with their reply papers, contends the court abused its discretion in overruling her objection and considering this evidence.  (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 ["due process requires a party to be fully advised of the issues to be addressed [on summary judgment] and be given adequate notice of what facts it must rebut in order to prevail"; moving party was not entitled to present new evidence in the reply without leave of court and without an opportunity for opposing party to respond]; cf. *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1183 ["a trial court may properly consider new evidence submitted with a reply brief 'so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material'"]; *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362 [same].)

Hart did not request a continuance or an opportunity to respond to the evidence and has not offered any argument either in the trial court or on appeal how she could have possibly been surprised by her own deposition testimony or in any way prejudiced by the court's consideration of it.  (See *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161 [reversal warranted for improper admission or exclusion of evidence in civil case only if appellant

establishes prejudice]; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 330 [appellant's burden to show both error and prejudice].) To the extent Hart contends the bank defendants did not meet their initial burden on summary judgment without her testimony, she is mistaken. The bank defendants submitted evidence of the written forbearance agreement along with Overton's declaration the agreement was made in September 2008. That evidence was sufficient to shift the burden to Hart to raise a triable issue of material fact. Hart attempted to undermine evidence of the written forbearance agreement by providing a carefully worded declaration that she did not sign that agreement "in September 2009." She did not disavow the agreement or contradict Overton's explanation as to when it was entered. Hart's declaration, therefore, failed to raise any triable issue of material fact on this point, making the inclusion of Hart's testimony in reply unnecessary to the court's decision to grant summary judgment. Nonetheless, because Hart's declaration might be interpreted to suggest she did not enter into the written forbearance agreement at all, the court considered Hart's deposition testimony, taken after the bank defendants filed their motion but long before Hart filed her opposition papers, which conclusively established she had signed the agreement in 2008. In this context, where the evidence was only necessary to rebut an ambiguity Hart herself created in her opposition papers and Hart was fully apprised by the moving papers of the issues to be addressed and given adequate notice of what facts she needed to rebut (cf. *San Diego Watercrafts v. Wells Fargo*, *supra*, 102 Cal.App.4th at p. 316), the trial court's consideration of Hart's deposition testimony was not an abuse of its discretion.

Finally, Hart cites Wells Fargo's behavior—its written loan modification offer in December 2008 prior to the due date of the final payment and its internal memorandum stating Hart had completed the "three payments"—as raising a triable issue of material fact as to whether the parties intended Hart deliver a balloon payment as part of any forbearance agreement. While not artfully stated, it appears Hart's argument is that the requirement in the written forbearance agreement that a fourth, balloon payment be made is ambiguous and, notwithstanding the language in the agreement, the parties never intended a fourth payment be made to cure the default.

19

A contract apparently unambiguous on its face may contain a latent ambiguity that can only be exposed by extrinsic evidence of the parties' intent. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 (*City of Hope*) ["[a] party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean"]; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1127 (*Wolf*).)

Hart does not identify any ambiguity in the written forbearance agreement, and there is no disputed extrinsic evidence that would require the issue be resolved by a jury. (See *City of Hope, supra,* 43 Cal.4th at p. 395 [interpretation of written instrument solely a judicial function "when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence"]; *Wolf, supra,* 162 Cal.App.4th at p. 1127 [when extrinsic evidence is undisputed, interpretation of written instrument is solely for court; "[t]his is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence"]; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439 [same].) The extrinsic evidence Hart cites, which shows efforts to agree on a modification of the loan following execution of the written forbearance agreement, does not establish ambiguity in the payment obligation itself. To the contrary, the internal memorandum is fully consistent with the forbearance agreement's terms; the agreement itself states it is temporary, designed to prevent foreclosure while the bank considers Hart's modification request. (See Bernhardt, Cal. Mortgages, Deeds of Trust and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2013) § 10:20, pp. 888.2 to 888.3 [forbearance agreements in this context are "by nature a temporary solution often entered into while the parties are seeking to refinance the debt . . . or solve other fundamental issues necessary to permit them to enter into a longer-term solution"].)

In sum, the trial court did not err in concluding Hart's equitable claims, premised on the invalidity of the foreclosure sale, and her related breach of oral contract claim fail as a matter of law.[5]

### 3. *Hart's Promissory Estoppel and Tort Claims Also Fail*

#### a. *Hart's promissory estoppel claim*

"'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) The elements of a promissory estoppel claim are (1) a clear promise, (2) reasonable and foreseeable reliance, (3) substantial detriment and (4) damages measured by the extent of the obligation assumed and not performed. (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 225.) The equitable claim is intended to supply a remedy for detrimental reliance on a promise when consideration for the promise is otherwise lacking. (*Raedeke v. Gibraltar Savings & Loan Assn.* (1974) 10 Cal.3d 665, 672; see *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 903 [courts "have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element"].)

Hart's promissory estoppel cause of action, premised on Montgomery's alleged oral representation that Hart would cure her default of more than $40,000 by paying three monthly payments totaling $9,918, necessarily fails for the same reason as her claim for breach of oral contract: Any promise her default would be cured by making monthly

---

[5] Hart does not make any arguments directed to her equitable claims for slander of title, declaratory relief or request for injunction. Accordingly, we treat those claims as abandoned. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["[w]hen an issue is unsupported by pertinent cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when appellant raises contention but "fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In any event, those equitable claims, premised on her related claim of wrongful foreclosure, necessarily fail for the same reason.

21

payments on her loan was superseded by the subsequent written forbearance agreement, which expressly required to her to make four payments to avoid foreclosure and informed her that, while her loan would be reviewed for a loan modification, the lender was "under no obligation to enter into any further agreement." (See Civ. Code, § 1625; *Casa Herrera, supra,* 32 Cal.4th at p. 344 [written agreement supersedes and bars from consideration prior negotiations or agreements at variance with the writing]; cf. *Bushell v. JPMorgan Chase Bank, N.A.* (Oct. 22, 2013, C070643) 220 Cal.App.4th 915, __ [2013 Cal.App. Lexis 841] [bank's trial modification plan assuring plaintiff "'we will modify your mortgage loan and you can avoid foreclosure'" if you comply with its terms provided clear promise supporting claims for breach of contract and promissory estoppel]; *West v. JPMorgan Chase Bank, N.A.*, *supra,* 214 Cal.App.4th at pp. 804-805 [bank's representations that it would not conduct foreclosure sale while it was evaluating certain input values was clear promise; and West relied on that promise to her detriment by not pursuing other options, including possibly selling her home and/or finding a co-signor].) Although Hart's first payment in September 2008 was made before she entered into the written forbearance agreement, she was obliged to make that payment under the subsequent written agreement. She cannot, therefore, claim damages in reliance on the superseded oral promise.[6]

b. *Hart's intentional and negligent misrepresentation claims*

The essential elements of a count for intentional misrepresentation are (1) a misrepresentation; (2) by an individual with knowledge of its falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088-1089 & fn. 2.) The essential elements of a claim for negligent misrepresentation are the same except, instead of proving the misrepresentation was made by an individual with knowledge of its falsity, the plaintiff must show the misrepresentation was made by a

---

[6]     As explained in section (b), below, Hart does not allege the bank defendants' made any promises or misrepresentations inducing her to enter into the written forbearance agreement.

person who had no reasonable grounds for believing it to be true. (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 488; *West v. JP Morgan Chase Bank, N.A., supra,* 214 Cal.App.4th at p. 792.)

Hart contends she raised a triable issue of material fact in connection with her claims for fraud and negligent misrepresentation. Relying again on Montgomery's alleged representation the bank defendants would reduce her monthly payment and interest rate, Hart maintains triable issues exist as to whether the bank defendants ever intended to honor that representation. Even were that assessment of the state of the evidence correct, however, any purported representation (including one made in connection with the January 2008 memorandum) was negated and superseded by the subsequent written forbearance agreement Hart signed. Hart cannot show reasonable or justifiable reliance on Montgomery's earlier promise. (See *Lazar v. Superior Court, supra,* 12 Cal.4th at p. 638 [promissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the misrepresentation].)

Significantly, Hart has not alleged she was fraudulently induced to execute the subsequent written forbearance agreement. (See *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn., supra,* 55 Cal.4th at pp. 1182-1183 [parol evidence rule does not bar evidence of fraudulent promises at variance with terms of writing]; *Julius Castle Restaurant Inc. v. Payne* (2013) 216 Cal.App.4th 1423, 1440 [""""[i]t is . . . settled that parol evidence of fraudulent representations is admissible as an exception to the parol evidence rule to show that a contract was induced by fraud""""].) In this respect, Hart's situation is far different from those presented by recent cases involving agreements between lenders or their trustee/agent and the homeowner in connection with the federal Home Affordable Mortgage Program (HAMP) in which the appellate courts found homeowners had stated valid claims of various types. (See, e.g., *West v. JPMorgan Chase Bank, N.A., supra,* 214 Cal.App.4th 780; *Bushell v. JPMorgan Chase Bank, N.A., supra*, 220 Cal.App.4th 915, __.) In both of those cases the courts held (1) a "trial period plan" (TPP), a loan repayment reduction agreement authorized under HAMP, when interpreted in accordance with HAMP's regulations, established a

firm promise to modify the loan if certain requirements were satisfied; and (2) a homeowner could state a claim for promissory estoppel and fraud by alleging the homeowner had detrimentally changed her position (either that she had made TPP loan payments under false pretenses or did not pursue other options to block foreclosure proceedings) in reliance on that allegedly false promise in the TPP and in subsequent communications.

*Lueras v. BAC Home Loans Servicing, LP* (Oct. 31, 2013, G046799) __ Cal.App.4th __ [2013 Cal.App. Lexis 886] is also inapposite. There, the court found the plaintiff/borrower had stated a claim for fraud based on express oral and written promises that foreclosure would not take place while plaintiff's loan was being reviewed for a HAMP loan modification. Those promises were allegedly made after a written forbearance agreement and were independently sufficient to state a claim for fraud. (*Id.* at p. __.) Here, in contrast, any oral promise to cure default and avoid foreclosure was made prior to, and superseded by, the written forbearance agreement detailing the forbearance requirements. Hart does not challenge the validity of that agreement or maintain that promises were made to her after she had entered into the agreement. Accordingly, any promises prior to the written agreement are immaterial. While we sympathize with Hart's plight, she is bound by the written agreement she signed.

c. *Hart's claims for intentional infliction of emotional distress and unfair competition*

Hart's claims for intentional infliction of emotional distress[7] and deceptive practices under the unfair competition law[8] are premised on her fraud claims. Because

---

[7] The elements of a cause of action for intentional infliction of emotional distress are "'"'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . .' Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."'" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.)

24

that cause of action fails, so too do her derivative claims for intentional infliction of emotional distress and unfair competition.

## DISPOSITION

The judgment is affirmed. Deutsche Bank and Wells Fargo are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J.[*]

---

8      Business and Professions Code section 17200 authorizes a private cause of action when a business practice is unfair, unlawful or fraudulent. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.